UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDWARD R. SERRATA,

        Plaintiff,

    v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA, et al.,

        Defendants.

Case No. 24-cv-02421-HSG

**ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT AND
DENYING DEFENDANT'S MOTION
FOR JUDGMENT**

Re: Dkt. Nos. 43, 45

Pending before the Court are the parties' cross-motions for judgment under Federal Rule of Civil Procedure 52. Dkt. Nos. 43, 45. Both motions are opposed. *See* Dkt. Nos. 48, 49. Plaintiff Edward R. Serrata brings a single claim to recover long-term disability benefits under the Employment Retirement Income Security Act ("ERISA"), from April 13, 2023, which is the date on which they were terminated by Defendant Unum Life Insurance Company of America ("UNUM"), to the date of judgment. The Court held a hearing on the cross-motions, Dkt. No. 50, and for the reasons discussed below GRANTS Plaintiff's motion for judgment and DENIES Defendant's motion.

## I. LEGAL STANDARD

Under ERISA Section 502(a)(1)(B), a civil action may be brought by a participant, beneficiary, or fiduciary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. *See* 29 U.S.C. § 1132(a)(1)(B).

The parties agree that the Court may resolve Plaintiff's ERISA claim on cross-motions for judgment under Federal Rule of Civil Procedure 52. "Under Rule 52, the Court conducts what is essentially a bench trial on the record, evaluating the persuasiveness of conflicting testimony and deciding which is more likely true." *See McCulloch v. Hartford Life & Accident Ins. Co.*, No. 19-CV-07716-SI, 2020 WL 7711257, at *7 (N.D. Cal. Dec. 29, 2020) (citing *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094-95 (9th Cir. 1999) (en banc)); *see also* Fed. R. Civ. P. 52(a)(1) ("In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately.").

A denial of ERISA benefits "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc) ("De novo is the default standard of review."). Here, the parties stipulated that the de novo standard of review applies. *See* Dkt. No. 34.

Under de novo review, "the court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010) (holding that, in an ERISA action for the denial of disability benefits, the burden of proof is on the claimant when the standard of review is de novo). "When a district court reviews de novo a plan administrator's determination of a claimant's right to recover long term disability benefits, the claimant has the burden of proving by a preponderance of the evidence that he was disabled under the terms of the plan." *Armani v. Nw. Mut. Life Ins. Co.*, 840 F.3d 1159, 1162-63 (9th Cir. 2016). The burden of proof remains on the claimant even "when disability benefits are terminated after an initial grant." *See Muniz*, 623 F.3d at 1296.

//

United States District Court
Northern District of California

## II.   FACTUAL FINDINGS[1]

### A.   Plaintiff's Background and Overview of Claim History

Plaintiff started working for Sherwin Williams Company ("SW") as a salesman in 1991. AR2855.[2] In 2005, Plaintiff began to experience problems with his vision and energy, and in 2006, he was diagnosed with multiple sclerosis ("MS") at the age of 45 following an episode of optic neuritis. *Id.* Despite his diagnosis, Plaintiff continued to work for six more years, during which his MS symptoms progressively worsened. *Id.* Eventually, in 2011, his MS symptoms, which included fatigue, leg pain and discomfort, leg weakness, leg paresthesias, vision problems, and loss of balance, made it difficult for him to perform the duties of his job. AR2855; AR129-30; AR109-10; AR2653. At that point, his doctors recommended that he stop working. AR2856. Plaintiff's last day of work was July 7, 2011. AR109. Plaintiff's last position at SW was National Account Sales Manager, which required frequent travel by air and car; coordinating sales strategy for obtaining new customers on a national scale; giving presentations to clients; and attending trade shows. AR2855.

Plaintiff applied for short-term disability benefits, which were approved and paid by Defendant until November 10, 2011, when his disability benefits claim was converted into a claim for long-term disability ("LTD") benefits. AR65.

Based on the MS-related symptoms he was experiencing, Plaintiff's claim for LTD benefits was approved as of January 4, 2012 "to the maximum duration," meaning that the benefits were approved through May 24, 2026 and would be paid so long as Plaintiff continued to meet the Plan's definition of disability. *See* AR298, AR317. For more than eleven years, Defendant

United States District Court
Northern District of California

---

[1] To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

[2] AR refers to the administrative record, which was filed on the docket in nine separate docket entries, as follows: (1) Dkt. No 46-1 (AR0001-0500); (2) Dkt. No. 46-2 (AR0501-0750; (3) Dkt. No. 46-3 (AR0751-AR1000); (4) Dkt. No. 46-4 (AR1001-AR1500); (5) Dkt. No. 46-5 (AR1501-2000); (6) Dkt. No. 47-1 (AR2001-AR2250); (7) Dkt. No. 47-2 (AR2251-AR2500); (8) Dkt. No. 47-3 (AR2501-AR3000); and (9) Dkt. No. 47-4 (AR3001-3200).

obtained regular updates from Plaintiff regarding his symptoms and it continued to pay him LTD benefits.

On April 13, 2023, Defendant terminated Plaintiff's LTD benefits as of April 14, 2023 on the basis that Plaintiff was not disabled from performing a sedentary occupation. The reasons that Defendant proffered for the termination included that Plaintiff's treating neurologist, Dr. Yana Kriseman, indicated in a form on March 10, 2023 that he could perform sedentary occupational demands; that his MS was stable based on MRI scans and the medication he was taking for MS; and that his activity level was in excess of that required for a sedentary occupation because he coached high school baseball and participated in golf. AR2574.

Plaintiff appealed the termination and submitted additional information in support of his claim, but Defendant ultimately upheld the termination on March 15, 2024.

Plaintiff then filed this action on April 23, 2024 to recover LTD benefits from the date of termination to the date of judgment. *See* Dkt. No. 1.

**B.    Relevant Policy Provisions**

By virtue of being an employee of SW, Plaintiff had long-term disability coverage under a policy that Defendant issued to SW (hereinafter, "the Policy"). AR 519-562.

The Policy provides that a claimant is entitled to LTD benefits if he is limited from performing the substantial duties of his "regular occupation" due to a sickness or injury and had a 20% or greater loss in his indexed monthly earnings due to that sickness or injury. AR533. After 24 months of payments, the standard for proving disability changes to the "any gainful occupation" standard, which provides that a claimant is "disabled when Unum determines that due to the same sickness or injury" the claimant is "unable to perform the duties of any gainful occupation for which [he is] reasonably fitted by education, training or experience." AR533.

"Sickness" is defined in the Plan as "an illness or disease." AR551. "Gainful occupation" is defined as an occupation that is or can be expected to provide the claimant with an income within 12 months of his return to work that exceeds 80% of his indexed monthly earnings, if he is working; or 60% of his indexed monthly earnings, if he is not working. AR548.

### C.      Proof of Disability Prior to Approval of LTD Benefits

As part of his application for LTD benefits, Plaintiff submitted medical records and reported his symptoms to Defendant's claims department staff.

On July 12, 2011, Plaintiff underwent a neurological exam by Dr. Edwin Garcia, his treating neurologist.  AR78.  Dr. Garcia noted that Plaintiff had been having difficulty performing his job because of extreme tiredness and fatigue, cramps and stiffness in his legs, and imbalance. AR79.  On July 25, 2011, Dr. Garcia wrote an attending physician statement in support of Plaintiff's application for disability benefits.  AR129-30.  Dr. Garcia prescribed Plaintiff Copaxone to prevent MS exacerbation and Nuvigil to treat fatigue.  AR130.

In November 2011, Plaintiff reported to Defendant that he was experiencing fatigue and muscle weakness, problems with balance and short-term memory, vision issues, and numbness and tingling in his extremities.  AR109-10.  Plaintiff reported being able to do "routine things around the house," such as mowing the lawn, "as tolerated," but that his ability to perform those tasks varied by the day.  AR109.

On December 21, 2011, Dr. Jeffrey Javerbaum, another of Plaintiff's treating neurologists, noted that Plaintiff could not perform light work and that he considered Plaintiff to be at "maximum medical improvement[.]"  AR245-46.

On January 18, 2012, Dr. T. Edward Collins, a board-certified neurologist retained by Defendant, reviewed Plaintiff's medical records, including available MRIs, to opine on whether Plaintiff had the ability to work.  AR292.  Dr. Collins concluded that Plaintiff was at "maximal medical improvement" and noted that "it is unlikely that claimant will show improvement in neurologic status and it is unlikely that he will regain sustainable, predictable capacity to perform his occupation or even a sedentary, less physically demanding occupation."  AR292.  Dr. Collins further noted: "No further medical action necessary."  *Id.*

On January 18, 2012, after reviewing Dr. Collins' opinions, a member of Defendant's LTD benefits staff wrote a note in Plaintiff's file that Plaintiff "does not have sustained predictable work capacity for *any occupation*."  AR298 (emphasis added).

United States District Court
Northern District of California

**D.      Approval of LTD Benefits as of January 4, 2012**

On January 19, 2012, Defendant approved Plaintiff's claim for LTD benefits as of January 4, 2012 and it did so "to the maximum duration."  *See* AR310; AR317 (stating that Plaintiff's LTD benefits claim was approved through May 24, 2026).  The letter regarding the approval states that LTD benefits were approved "because the medical documentation supports you are unable to perform predictable/sustainable work capacity due to the symptoms related to your diagnosis of Multiple Sclerosis.  Your benefits will continue as long as you meet the definition of disability in the policy provided by your employer and are otherwise eligible under the policy terms."  *See* AR325.

**E.      Social Security Disability Benefits**

On March 21, 2014, Plaintiff was approved for Social Security Disability benefits as of January 2012.  AR488.  The Policy requires that any such benefits be subtracted from any LTD benefits paid under the Policy.  AR574.

**F.      Medical History and Other Relevant Information Obtained Between the Approval and Subsequent Termination of LTD Benefits**

In the more than eleven years following the approval of Plaintiff's LTD benefits, Defendant's LTD benefits department staff regularly obtained updated medical records and status updates from Plaintiff regarding his symptoms.  They also reviewed Plaintiff's social media activity and conducted related internet research.  After reviewing this information, the staff routinely approved the continued of payment of LTD benefits to Plaintiff.  *See, e.g.*, AR1503, AR1505.

Notes written by the LTD benefits department staff show that Plaintiff consistently reported over the years suffering from symptoms of MS, including leg pain and discomfort, muscle weakness, fatigue, problems with balance, and vision issues.  *See, e.g.*, AR695-96; AR729-30; AR948; AR1501-02; AR1473.  Plaintiff also routinely reported performing certain activities when he was able, such as grocery shopping, house chores, exercise, walking the dog, helping his wife when she was sick, and coaching high school baseball during the season.  *See* AR730, AR755, AR1501-02; AR2104.

United States District Court
Northern District of California

Defendant's monitoring of Plaintiff's social media activity and related internet research resulted in findings that suggest that Plaintiff coached high school baseball and played golf. In September 2018, Defendant obtained screenshots of what appears to be Plaintiff's Facebook page. AR890-915. The screenshots show statements and photographs from 2018 and earlier years indicating that Plaintiff may have coached members of Hillsdale High School's baseball team and played golf. *See, e.g.*, AR895, AR901, AR903. In March and October 2022, Defendant obtained screenshots of webpages from 2022 and earlier years, as well as online news articles from 2017, indicating that Plaintiff had coached Hillsdale High School's baseball team. AR 1575-78; AR1581-88; AR1596-97. It also obtained screenshots of a 2021 Facebook post indicating that Plaintiff played golf. AR1592.

The most relevant medical records that Defendant obtained during the years it paid LTD benefits to Plaintiff are discussed below.

In February 2020, Plaintiff reported to Dr. Carter Chang, his family medicine treating physician, that he had been trying to exercise but that he had recently experienced significant pain in his upper legs and that he felt extremely fatigued. AR1434. Dr. Chang recommended that Plaintiff contact neurologist Dr. Yana Kriseman. *Id.* In October 2020, Dr. Chang filled out a form in which he indicated that Plaintiff did not have any physical or behavioral restrictions or limitations. *See* AR1076. In his notes relating to this form, Dr. Chang stated that he had found no limitations for Plaintiff but that there was "documentation" that Plaintiff "has an ongoing, chronic condition (not curable)." AR1121.

On March 17, 2021, Plaintiff's treating neurologist, Dr. Yana Kriseman, noted that Plaintiff was experiencing "ongoing chronic MS symptoms," including fatigue, leg pain, leg weakness, paresthesias, and spasms. AR1658. She also noted that Plaintiff had difficulty sleeping through the night because of his symptoms. AR1659. Dr. Kriseman further noted that Plaintiff was "currently stable on Copaxone without side effects" and that she would "not make medication changes at this time due to possible increased risk of side effects from other medications." *Id.*

On July 18, 2022, Dr. Kriseman noted that Plaintiff's symptoms, which included fatigue, muscle spasms in the legs, leg weakness, instability with gait, and "veering when walking," "come

and go as he is fatigued[.]" AR1679. She also noted that he denied any new episodes of numbness and weakness but continued to have instability and pain in the lower back and paresthesias in the legs. AR1679. She also noted that he was "doing well on brand copaxone" and that he had not tolerated other medications in the past. AR1682.

In November and December 2022, Plaintiff was diagnosed with thyroid cancer and underwent surgery. AR1715.

On February 17, 2023, Defendant sent Dr. Kriseman a form asking her whether Plaintiff was capable of performing sedentary occupational demands which, according to Defendant, require "[m]ostly sitting, may involve standing or walking for brief periods of time with the ability to make positional changes" and "[o]ccasional lifting, carrying, pushing, and pulling up to 10 pounds" (hereinafter, "sedentary occupational demands"). AR1908. On March 10, 2023, Dr. Kriseman checked the "Yes" box and signed the form. AR1908.

On March 28, 2023, Plaintiff had a televisit with Dr. Kriseman. Dr. Kriseman noted that Plaintiff was experiencing problems with balance and walking; was having ongoing paresthesias and sometimes tremors in the legs, which are worse in stationary positions such as sitting; can only sit for ten to fifteen minutes before having to move around for about ten minutes to help abate the discomfort; can sometimes feel tingling in the arms when sedentary; was having difficulty sleeping; was experiencing fatigue; was having difficulty with concentration and attention; and was experiencing back pain. AR2339-40.

On April 11, 2023, a registered nurse in Defendant's LTD benefits department, Jasie Smith, reviewed Plaintiff's file and concluded that his MS symptoms did not preclude him from performing sedentary occupational demands on a full-time basis based on the form filled out by Dr. Kriseman on March 10, 2023, and the fact that Plaintiff had engaged in increased activity starting in 2017 through 2022 in the form of baseball coaching and participating in golf. AR2559-63.

On April 12, 2023, a vocational analysis was conducted by Norma Parras-Potenzo at Defendant's request. AR2566. The analysis relied on Ms. Smith's findings that Plaintiff was capable of performing sedentary occupational demands on a full-time basis. *See id.* Ms. Parras-

Potenzo concluded that jobs existed that would satisfy Plaintiff's wage requirements under the Policy (i.e., ones that paid at least $36.93 per hour) and that he could perform based on his capacity to perform sedentary occupational demands, namely inside sales representative, national account manager, and hotel sales representative.  AR2566.

### G.    Termination of LTD Benefits as of April 14, 2023

On April 13, 2023, Defendant terminated Plaintiff's LTD benefits as of April 14, 2023. AR2573-79.  The reason for the termination was that Plaintiff no longer met the Policy's definition of disability because he was capable of performing a sedentary occupation that paid at least $36.93 per hour.  AR2574.  The termination letter noted that: (1) Plaintiff's MRIs showed that his MS was stable and that his treatment for MS had not changed; (2) Dr. Kriseman indicated on March 10, 2023 that Plaintiff could perform sedentary occupational demands on a full-time basis; (3) his activity level was "in excess of what is required for a sedentary occupation" given that he had "been coaching high school baseball since 2017" and also "participated in golf"; and (4) his physical exam findings are not consistent with his reported symptoms.

### H.    Medical Information after Termination of LTD Benefits but Prior to Plaintiff's Appeal

Following the termination of his LTD benefits, Plaintiff submitted new documentation from Dr. Kriseman.  On April 23, 2023, Dr. Kriseman completed a new form indicating that she did not agree that Plaintiff could perform sedentary occupational demands.  AR2620.  Dr. Kriseman incorporated by reference her notes from March 28, 2023 which, as discussed above, provide that Plaintiff was experiencing fatigue, leg paresthesias and tremors, and problems with balance, concentration, and attention, and that he could only sit for ten to fifteen minutes at a time before needing to stand up and move around for about ten minutes.  *See* AR2339-40.

On April 25, 2023, Dr. James Haller,[3] who is board certified in family medicine and was retained by Defendant, wrote a letter to Dr. Kriseman asking whether she agreed that, in light of

---

[3] Defendant mistakenly referred to Dr. Haller as "Dr. James B. Baller" in one of its briefs.  *See* Dkt. No. 49 at 6.

Plaintiff's stable MS and ability to coach baseball, play golf, and engage in other activities, he had capacity to work a sedentary job full-time. AR2630.

On April 26, 2023, Dr. Kriseman responded that she did not agree and she certified that Plaintiff could not perform sedentary occupational demands. AR2637. She noted that Plaintiff had "difficulty with mostly sitting as he reports worsened paresthesias in the legs after 10-15 minutes of sitting before having to get up and move around[.]" AR 2637.

On May 8, 2023, Dr. Haller reviewed Plaintiff's medical records and concluded that the evidence in Plaintiff's file did not support Dr. Kriseman's conclusion that Plaintiff was precluded from performing sedentary occupational demands. AR 2652-55.

On May 10, 2023, Dr. Michael Snyder, a board-certified neurologist retained by Defendant, reviewed Plaintiff's medical records. AR2659-61. He concluded that Plaintiff had the ability to perform sedentary occupational demands on a full-time basis based on (1) indications that he was capable of serving as baseball coach for the local high school; and (2) there was no evidence of MS progression or changes in his treatment for MS symptoms. AR2660-61.

On May 15, 2023, Defendant advised Plaintiff by letter that it had reviewed the new information provided by Dr. Kriseman on April 23, 2023 but that his LTD benefits claim would remain closed in light of the opinions of Dr. Haller and Dr. Snyder. AR2668-69.

### I.      Appeal of Termination of LTD Benefits

On June 27, 2023, Plaintiff appealed the termination of his LTD benefits and submitted a letter in support of the appeal. AR2692. In his letter, Plaintiff represented that his condition was "just as bad as it was in 2011 and 2014" and that he was not capable of returning to the workforce in any capacity. AR2692. Plaintiff represented that he suffered from severe leg pain that was exacerbated by prolonged stretches of staying in one position, such as sitting. AR2692. He also represented that he recently had had surgery for thyroid cancer and that his MS symptoms had worsened since then. AR2692. Plaintiff represented that his coaching of high school baseball was on a volunteer basis only, never involved spending more than two hours at a time with the team, never involved "anything remotely physical," and ended in 2022 because his MS symptoms worsened after his cancer diagnosis. AR2693. With respect to golfing, he represented that he had

never carried golf clubs, that he "cannot really even swing a golf club," and that he participated in a group event but "rel[ies] mostly on his partners while [he] ride[s] in the cart and oversees the event." AR2693.

On July 20, 2023, Dr. Michael Chilungu, a board certified neurologist retained by Defendant, reviewed Plaintiff's medical records and concluded that he was capable of performing sedentary occupational demands because (1) his MS was not worsening; and (2) "the level of activity documented in the file including light housework, attending games, driving, gardening, walking his dog, coaching baseball in recent years, caring for his wife, and playing golf suggests the claimant has retained functional capacity consistent with at least sedentary exertion." AR2740-44.

On July 31, 2023, Plaintiff informed Defendant that he had retained a new attorney and that he would be withdrawing his appeal so that his new counsel could submit additional information in support of his claim. AR2780.

On January 4, 2024, Plaintiff submitted a new appeal with the assistance of his new counsel and attached supplemental materials in support of his claim, including a report by a neurologist who performed an in-person neurological evaluation of Plaintiff, Dr. Peter Cassini; a vocational analysis by Charles Galarraga; and letters by various third parties. AR2842.

Dr. Peter Cassini, who is board certified in neurology, has diagnosed and treated patients with MS for more than 25 years. AR2860. Dr. Cassini reviewed 2724 pages of Plaintiff's medical records and completed an in-person neurological exam of Plaintiff in November 2023. In a report dated November 28, 2023, Dr. Cassini concluded that Plaintiff was not physically capable of performing sedentary occupational demands on a full-time basis because of physical symptoms of MS, and that his cognitive impairment would contribute to his inability to perform sedentary occupational demands. AR2861. These conclusions were based on Dr. Cassini's findings that Plaintiff had symptoms consistent with bilateral lower extremity spasticity resulting in impaired gait and increased focus and effort to maintain locomotion and balance; deep tendon reflexes being increased in all four extremities; and sustained clonus in the legs with sustained posture of the lower extremities. AR2860-61. Dr. Cassini further found that increased tone in Plaintiff's

11

extremities affected control, that he had impairment of fine motor movements in the hands, and that he had rapid alternating movements in all four extremities that worsened with increases in rate. AR2860. Dr. Cassini noted: "Without question, at the time of Mr. Serrata's most recent disability evaluation his Multiple Sclerosis derived symptoms and impairments were greater than at any other time in his life. . . . It is expected that Mr. Serrata's condition will continue to progress over time." AR2861.

Charles Galarraga, who was retained by Plaintiff, conducted a vocational analysis. In a report dated January 4, 2024, Mr. Galarraga concluded, after considering Dr. Cassini's and Dr. Kriseman's opinions regarding Plaintiff's lack of capacity to perform sedentary occupational demands, that no jobs existed that matched Plaintiff's training, education, and experience after taking into account his restrictions and limitations. *See* AR2863-64.

Below are some examples of the third-party letters that Plaintiff submitted in support of his appeal.

Gina Serrata, Plaintiff's wife, wrote that since Plaintiff was diagnosed with MS, his symptoms have slowly gotten worse, particularly after his thyroid cancer diagnosis. AR2878-79. Mrs. Serrata represents that Plaintiff struggles with his balance and has fallen numerous times, experiences constant fatigue, experiences constant pain in his legs and back, has experienced memory loss and cognitive difficulties, and cannot sit or stand for too long. *See id.* Letters written by Plaintiff's sister, Lucinda Roman, and Plaintiff's daughter, Jennifer Austin, contain similar representations regarding Plaintiff's symptoms and impairments. *See* AR2899; AR2882-83.

Larry Marcone, who is a parent volunteer at Hillsdale High School, wrote that Plaintiff took a "volunteer position" with the school's baseball team as a mentor, which involved reviewing film and stats and discussing batting approaches with players. AR2889. He wrote that Plaintiff's goal was to spend seven to eight hours a week for three months of the year at the school performing this role. AR2890. He further represented that Plaintiff disclosed to the team his MS diagnosis and inability to throw batting practice, coach first or third base, or hit any infield practice. *Id.* He also noted that Plaintiff had to leave many practices and games because did not

United States District Court
Northern District of California

feel well and "spent all his time observing from the dugout or outside the field" when he was there. *Id.*

James Madison, the Hillsdale High School Athletic Director, wrote that Plaintiff "volunteered his time" to the school's baseball team and that his role was limited to observing and giving verbal instructions to the athletes. AR2887. He also wrote that Plaintiff's "availability and role as a coach was always limited due to his medical condition (MS)," and that he was not able to do "what some of the other coaches regularly did (hit ground balls, throw batting practice, coach the bases, etc." *Id.* He further noted that Plaintiff occasionally had to skip practices or leave early for health reasons. *Id.*

In response to Plaintiff's appeal, Defendant retained Shannon O'Kelley to conduct a vocational analysis. In a report dated January 9, 2024, Ms. O'Kelley concluded that the vocational analysis performed by Charles Galarraga on January 4, 2024 "doesn't alter the conclusions of the vocational review of 4/12/23" that was conducted by Norma Parras-Potenzo at Defendant's request. AR2952. As discussed above, Ms. Parras-Potenzo concluded that sedentary jobs existed that suited the wage requirements under the Policy and that Plaintiff could perform, namely inside sales representative, national account manager, and hotel sales representative. AR2566.

Defendant also retained Dr. Kaiwen Lin, a board-certified neurologist, to conduct a review of Plaintiff's medical records and other materials submitted as of January 25, 2024, which is the date of his report. AR2962. Dr. Lin concluded that Plaintiff could perform sedentary occupational demands because (1) MRI scans had repeatedly been stable; (2) Plaintiff continued to be treated only with Copaxone, which is the lowest-efficacy MS medication; (3) Plaintiff could perform activities such as driving a golf cart, grocery shopping, and "mentor[ing] high school baseball"; and (4) Dr. Kriseman opined that Plaintiff could perform sedentary occupational demands on March 10, 2023 and "there is no communication or evidence from Dr. Kriseman to indicate that her decision on 3/10/23 was a mistake[.]" AR2959-63.

On February 5, 2024, Charles Galarraga issued an addendum to his report. AR3014-15. The addendum provides that Mr. Galarraga surveyed employers hiring within 50 miles of Plaintiff's address for the positions identified by Defendant as being capable of being performed

United States District Court
Northern District of California

by Plaintiff.  AR3014-15.  Mr. Galarraga concluded that none of those employers would hire someone with Plaintiff's restrictions and limitations for the positions that Defendant identified. *See id.*

On February 20, 2024, Shannon O'Kelley issued an addendum to her report in which she reiterated the conclusions in her original report.  AR3096.

On February 21, 2024, Dr. Lin issued an addendum to his report in which he took into account the addendum to Mr. Galarraga's vocational report and concluded that the medical information on file does not support restrictions and limitations that would preclude Plaintiff from performing sedentary occupational demands.  AR3091-92.

On March 1, 2024, Dr. Kriseman wrote a letter in support of Plaintiff's appeal, which states:

> I am providing this additional information in regard to the form I filled out on 3/10/2023.  While Edward R. Serrata is able to sit, he has significant worsened symptoms after a short period of time requiring frequent position changes.  This does pose a disability for activity that requires sustained and prolonged sitting.  I did not conclude that Edward Serratas [sic] condition had improved to the point that he could return to work or that he was no longer disabled and it was not my intention to indicate that in the form.

AR3119.

**J.    Decision Upholding Termination of LTD Benefits as of April 14, 2023**

On March 15, 2024, Defendant upheld its termination of Plaintiff's LTD benefits on the grounds that (1) the medical records did not indicate neurological deficits, progression, or worsening of Plaintiff's MS such that he would be precluded from sedentary activities; (2) mental status exams were normal and no further evaluations were performed to evaluate any purported diminished cognitive function; (3) Dr. Kriseman noted in a form dated March 10, 2023 that Plaintiff could perform sedentary occupational demands, and her opinions on that issue changed only after Plaintiff self-reported issues with balance, fatigue, walking, leg strength, and concentration and attention; and (4) Plaintiff's activities met or exceeded what is needed to perform sedentary work.  AR3160-69.

On April 23, 2024, Plaintiff filed this action to recover LTD benefits from the date that

United States District Court
Northern District of California

14

Defendant terminated them to the date of judgment.  Dkt. No. 1.

## III.    CONCLUSIONS OF LAW

Before turning to the merits of the parties' cross-motions, the Court addresses a threshold issue.  Plaintiff requests that the Court consider an article titled "Multiple Sclerosis," which was published on the website of the National Institute of Neurological Disorders and Stroke, in considering the motions.[4]  *See* Dkt. No. 44.  The article contains background information on the causes and symptoms of MS and other information relating to MS.  *See id.*  Defendant has filed no opposition or objection to Plaintiff's request.

A request to admit evidence outside of the administrative record is governed by the "restrictive rule of *Mongeluzo*."  *See Opeta v. Nw. Airlines Pension Plan for Cont. Emps.*, 484 F.3d 1211, 1217 (9th Cir. 2007) (citing *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir. 1995)).  Under that rule, "[a] district court, when exercising de novo review of an ERISA benefits denial decision, may [in its discretion] admit additional evidence when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision."  *Muniz*, 623 F.3d at 1297 (citation and internal quotation marks omitted); *see also Opeta*, 484 F.3d at 1217 (same).  The Ninth Circuit has "emphasized" that "'a district court should not take additional evidence merely because someone at a later time comes up with new evidence' and that '[i]n most cases' only the evidence that was before the plan administrator at the time of determination should be considered."  *See Opeta*, 484 F.3d at 1217 (quoting *Mongeluzo*, 46 F.3d at 944).  Non-exhaustive examples of the "exceptional circumstances" where the admission of extrinsic evidence could be considered necessary include where claims require the consideration of complex medical questions or issues regarding the credibility of experts, and where there is additional evidence that the claimant could not have presented in the administrative process.  *See id.*

---

[4] Plaintiff styled the request as a request for judicial notice.  However, because the request falls within the scope of the rule of *Mongeluzo,* the Court treats the request as brought under that rule.

United States District Court
Northern District of California

Here, the article in question is not necessary for the Court to conduct an adequate de novo review of the termination of Plaintiff's LTD benefits.  Accordingly, the Court declines to exercise its discretion to admit the article.

The Court now turns to the substance of the parties' cross-motions.  The parties appear to agree that, to prevail on his claim to recover LTD benefits under ERISA, Plaintiff must establish by a preponderance of the evidence that (1) he has a sickness or injury that (2) prevents him from performing the duties of "any gainful occupation" for which he is reasonably fitted by education, training, or experience.  *See* AR533.  Further, the parties appear to agree that a gainful occupation based on Plaintiff's education, training, or experience is one that requires, at a minimum, sedentary occupational demands[5] and that would pay at least $36.93 per hour.  *See* AR548; AR2556.

Defendant argues that Plaintiff has failed to establish that he was incapable of performing any gainful occupation that requires sedentary occupational demands as of the date when his LTD benefits were terminated.

The Court finds that the preponderance of the evidence shows that, even when Defendant terminated his LTD benefits on April 13, 2023, Plaintiff could not perform any gainful occupation that requires sedentary occupational demands because of physical symptoms of MS in his legs.  Accordingly, the Court finds that Defendant erred in terminating Plaintiff's LTD benefits as of April 14, 2023 and in upholding the termination on appeal.  *See Abatie*, 458 F.3d at 963 (holding that, when reviewing a decision under the de novo standard of review, the "court simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits").

Below, the Court addresses (1) why Plaintiff has met his burden of showing by a preponderance of the evidence that he was disabled from any gainful occupation at the time his LTD benefits were terminated; (2) why the reasons that Defendant gave in its denial letters for

---

[5] According to Defendant, the sedentary occupational demands require: (1) mostly sitting, may involve standing or walking for brief periods of time, with the ability to make positional changes; and (2) lifting, carrying, pushing, and pulling up to ten pounds occasionally.  *See* AR2575.

United States District Court
Northern District of California

terminating Plaintiff's LTD benefits do not alter that conclusion; and (3) why the other arguments that Defendant advances in its briefs also do not alter that conclusion.

**A. Plaintiff Has Met His Burden of Showing by a Preponderance of the Evidence That He Was Disabled When His LTD Benefits Were Terminated**

The following facts are undisputed. Plaintiff was diagnosed with MS in 2006 and has continued to carry that diagnosis at all relevant times. Before Plaintiff's claim for LTD benefits was approved, Plaintiff reported symptoms that included fatigue, leg pain and discomfort, leg cramps and stiffness, and imbalance, and two different physicians (Plaintiff's treating neurologist, Dr. Javerbaum, and Defendant's retained neurologist, Dr. Collins) opined that Plaintiff had reached "maximal medical improvement" after reviewing Plaintiff's MRI scans and reported symptoms. Immediately prior to the approval of LTD benefits, Defendant's claim review staff wrote a note in Plaintiff's file stating, based on Dr. Collins' opinions, that Plaintiff "does not have sustained predictable work capacity for *any* occupation." AR298 (emphasis added). Defendant approved LTD benefits from January 2012 through the maximum duration of benefits permitted under the Policy (i.e., through May 2026) because the medical evidence indicated that Plaintiff was "unable to perform predictable/sustainable work capacity due to the symptoms related to [his] diagnosis of Multiple Sclerosis." AR235. Defendant continued to pay LTD benefits to Plaintiff for eleven years before terminating them as of April 14, 2023. At least nine of those years of LTD benefits payments were under the "any gainful occupation" standard of disability, since that standard applies after the first 24 months of LTD benefits.

Persuasive medical evidence in the record indicates that, around the time that his LTD benefits were terminated, Plaintiff continued to suffer from physical MS-related symptoms that precluded him from performing a full-time sedentary job. For example, Plaintiff's treating neurologist of several years, Dr. Kriseman, noted on March 28, 2023 that Plaintiff was experiencing discomfort due to paresthesias and tremors in the legs and sometimes in the arms, particularly when sitting or sedentary, and that he needed to stand up and move around for about ten minutes after sitting for ten to fifteen minutes to alleviate discomfort from paresthesias in his legs. *See* AR2339-40. She also noted that he was experiencing problems with balance, walking,

United States District Court
Northern District of California

United States District Court
Northern District of California

and fatigue. *See id.* Dr. Kriseman concluded on March 28, 2023, and again on April 26, 2023, that Plaintiff's inability to sit for more than ten to fifteen minutes before needing to get up and move around for about ten minutes because of MS symptoms in his legs precluded him from performing sedentary occupational demands on a full-time basis, as those demands require mostly sitting. *See* AR2620; AR2339; AR2637. The Court credits these opinions by Dr. Kriseman and gives them substantial weight because she treated Plaintiff's MS symptoms, including leg pain and discomfort, for several years prior to the termination of Plaintiff's LTD benefits. Her opinions about Plaintiff's MS symptoms and associated restrictions and limitations are the most salient and reliable as compared to other evidence in the record on that issue. Additionally, Dr. Kriseman's opinions are consistent with the opinions of Dr. Cassini, a neurologist with more than 25 years of experience in treating patients with MS. AR2860-61. After conducting an in-person neurological exam on Plaintiff and reviewing more than 2700 pages of his medical records, Dr. Cassini concluded that Plaintiff was not capable of performing sedentary occupational demands on a full-time basis because of physical symptoms associated with MS in his extremities. *See id.* The Court finds Dr. Cassini's opinions to be reliable because he personally examined Plaintiff and because they are based on his extensive experience in treating MS patients.

Because Plaintiff was not capable of performing sedentary occupational demands at the time his benefits were terminated, he was not capable of performing any gainful occupation for which he was reasonably fitted by education, training, or experience. The vocational analysis performed by Charles Galarraga, which relied on Dr. Cassini's and Dr. Kriseman's opinions regarding Plaintiff's lack of capacity to perform sedentary occupational demands, confirms this. *See* AR2863-64.

The conclusion that Plaintiff was disabled because of MS symptoms in his legs at the time his benefits were terminated is bolstered by the fact that Defendant paid Plaintiff LTD benefits for more than nine years under the "any gainful occupation" standard based on symptoms of MS that included discomfort and pain in his extremities. *See Muniz*, 623 F.3d at 1296 ("That benefits had previously been awarded and paid may be evidence relevant to the issue of whether the claimant was disabled and entitled to benefits at a later date[.]"); *Iravani v. Unum Life Ins. Co. of Am.*, 692

F. Supp. 3d 904, 922 (N.D. Cal. 2023) ("But Unum's decade-long approval of Plaintiff's benefits weighs in favor of the conclusion that she continues to have disabling medical conditions.").

**B.    The Reasons That Defendant Gave in Its Denial Letters for Terminating Plaintiff's LTD Benefits Do Not Alter the Court's Conclusion**

Defendant's termination of LTD benefits and the decision upholding the termination on appeal were based in part on a form that Dr. Kriseman completed on March 10, 2023. On that form, Dr. Kriseman checked a box indicating that she agreed that Plaintiff was capable of performing sedentary occupational demands. AR1908. However, a letter that Dr. Kriseman submitted in support of Plaintiff's appeal on March 1, 2024 explains that she did not intend to indicate on the March 10, 2023 form that Plaintiff "could return to work or that he was no longer disabled." *See* AR3119. The letter further states that Dr. Kriseman believed that Plaintiff was disabled for any "activity that requires sustained and prolonged sitting" because of symptoms that Plaintiff experienced after sitting for a short period of time. *See id.* The Court thus finds that Dr. Kriseman's March 1, 2024 letter plainly negated Defendant's ability to rely on the March 10, 2023 form in the manner it did. Defendant stated in its final denial letter that Dr. Kriseman changed the opinions she had expressed on the March 10, 2023 form after Plaintiff self-reported issues with balance, fatigue, walking, and leg strength on March 28, 2023, implying that Plaintiff had not previously mentioned those symptoms to Dr. Kriseman and only mentioned them to her on March 28, 2023 to get her to withdraw the March 10, 2023 form. *See* AR3165. However, medical records show that Plaintiff also reported those symptoms to Dr. Kriseman two years earlier. On March 17, 2021, Dr. Kriseman noted that Plaintiff was experiencing "ongoing chronic MS symptoms," including fatigue, leg pain, leg weakness, paresthesias, and spasms. AR1658. Thus, the Court rejects the suggestion that Dr. Kriseman improperly modified her statements about Plaintiff's capacity to perform sedentary occupational demands based on questionable self-reporting of new symptoms by Plaintiff to her after she completed the March 10, 2023 form.

The termination of benefits was also based in part on Defendant's conclusion that Plaintiff's MRI scans and treatment for MS indicated that his MS was stable and was not worsening. That conclusion implies that Plaintiff must show that his MS is worsening to establish

entitlement to LTD benefits under the Policy.  However, Defendant has not pointed to any provisions in the Policy or to any legal authority indicating that establishing continuing degeneration of MS is necessary to prove entitlement to benefits based on MS-related symptoms. Because Defendant paid LTD benefits to Plaintiff for more than nine years under the "any gainful occupation" standard even though his MRI scans and MS treatment were stable, a lack of degeneration in Plaintiff's MS suggests that he continues to be disabled.  *See Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 871 (9th Cir. 2008) ("MetLife had been paying Saffon long-term disability benefits for a year, which suggests that she was already disabled.  In order to find her no longer disabled, one would expect the MRIs to show an improvement, not a lack of degeneration.").[6]

Defendant also premised the termination of Plaintiff's LTD benefits on its conclusion that his activity level exceeded sedentary occupational demands because he had been coaching high school baseball since 2017 and also participated in golf.  This conclusion was based on screenshots that Defendant took of Plaintiff's Facebook page suggesting that Plaintiff may have played golf and coached high school baseball, as well as printouts of websites and local news articles suggesting that Plaintiff held various positions with the Hillsdale High School baseball team.  *See, e.g.*, AR890-915; AR1581-97.  The Court has reviewed these materials and finds that they do not support the inference that Defendant invites the Court to draw from them, which is that they demonstrate that Plaintiff can perform sedentary occupational demands on a full-time basis.  The materials themselves say nothing about the frequency or extent to which Plaintiff may have engaged in coaching or golfing activities.  At best, the materials suggest that Plaintiff may have, at times, coached high school baseball and played golf.  Without knowing the frequency and duration of those activities, or the specifics of Plaintiff's physical and cognitive exertion when performing such activities, the materials in question have little to say about the extent of Plaintiff's disability or lack thereof.  The Court therefore accords them little weight.  The only materials in the record that provide more detailed insight into Plaintiff's coaching and golfing activities are the

---

[6] Plaintiff cites *Saffon* in its opening brief, Dkt. No. 43 at 23, and Defendant failed to distinguish it in its opposition, *see generally* Dkt. No. 49.

United States District Court
Northern District of California

letters he submitted in support of his appeal. There, Plaintiff and various people with personal knowledge of his activities represent that his coaching was on a volunteer basis and was limited to observing and mentoring players, watching film, and giving verbal instructions from the dugout or outside the field, and that the maximum amount of time that Plaintiff could have spent on those tasks was seven to eight hours *per week* during the three months of the year that baseball was in season. *See* AR2887-90, AR2693. They also provide that Plaintiff's golfing activities were occasional and mostly involved riding in a golf cart. AR2693.

The Court finds that Plaintiff's coaching and golfing activities do not weigh against its conclusion that he was disabled at the time his benefits were terminated because there is no evidence in the record showing that the activities involved exertion that equaled or exceeded the sedentary occupational demands on a full-time basis. Such activities are not inconsistent with a finding of disability for the additional reason that Defendant continued to pay Plaintiff LTD benefits for years after it became aware of them. The record indicates that (1) Defendant was aware as of September 2018 of at least some of the social media posts that it claims reflect coaching and golfing activities by Plaintiff, *see* AR890-915; and (2) Defendant was aware as of 2020 that Plaintiff helped coach high school baseball during the season for couple of months when he felt well enough, as Plaintiff himself conveyed that information to Defendant's LTD benefits staff, *see* AR1502. Despite being aware of this information, on February 3, 2021, Defendant notified Plaintiff via letter that it had completed its review of his LTD benefits claim and that he "continue[d] to be eligible for benefits under the policy." *See* AR1505.

Defendant's final letter upholding its termination of LTD benefits states that other activities that Plaintiff engaged in on a regular basis, including household chores, grocery shopping, gardening, and walking the dog, met or exceeded "what is needed to perform sedentary level work." AR3165. The Court finds that Defendant's conclusion based on these activities is flawed for reasons similar to the ones discussed above in the context of Plaintiff's coaching and golfing activities. There is no evidence in the record showing that the cited activities involved full-time exertion, either alone or in combination, that equaled or exceeded the sedentary occupational requirements. Further, Defendant continued to pay Plaintiff LTD benefits for years

United States District Court
Northern District of California

21

after it learned that Plaintiff could engage in these activities, which indicates that they are not inconsistent with Plaintiff being disabled because of MS symptoms. For example, in November 2020, Plaintiff reported to Defendant during his regular calls with claims staff that he cooked, did laundry, walked the dog, grocery shopped, and drove during the day as part of his daily routine. *See* AR1502. Despite being aware of this information, on February 3, 2021, Defendant notified Plaintiff that he "continue[d] to be eligible for benefits under the policy." *See* AR1505.

The termination of Plaintiff's LTD benefits, and Defendant's decision to uphold the termination after the administrative appeal, were also predicated on the opinions of Defendant's retained physicians, Dr. Haller, Dr. Snyder, Dr. Chilungu, and Dr. Lin, all of whom concluded that Plaintiff could perform sedentary occupational demands on a full-time basis.

The Court gives minimal weight to the opinions Dr. Haller, Dr. Snyder, and Dr. Chilungu because they assume that Plaintiff's ability to perform activities such as household chores, walking the dog, coaching baseball, and golfing indicate a capacity to perform sedentary occupational demands on a full-time basis. That assumption is unsupported for the reasons discussed above. Further, Dr. Haller and Dr. Snyder did not take into account any of the letters submitted in support of Plaintiff's appeal. Dr. Chilungu considered Plaintiff's letter in support of his appeal but not those submitted by third parties. The letters that were omitted from the physicians' reports make clear that Plaintiff's coaching activities were much more limited than what they assumed in their reports. Dr. Haller, Dr. Snyder, and Dr. Chilungu also did not take into account Dr. Cassini's opinions, or the March 1, 2024 letter that Dr. Kriseman submitted in support of Plaintiff's appeal. While the omitted materials were submitted after the physicians had completed their reports, Defendant could have asked them to write addenda to their reports after providing the materials to them, but it didn't.

The Court also gives minimal weight to the opinions of Dr. Lin for the following reasons. First, Dr. Lin appears to have relied on Dr. Kriseman's statement on the form dated March 10, 2023 that Plaintiff could perform sedentary occupational demands, and did so on the basis that there is no evidence that Dr. Kriseman made a "mistake[]" when she completed that form. *See* AR2963. However, as discussed above, Dr. Kriseman clearly did rescind this reading of the form

in her letter of March 1, 2024.[7]  Second, Dr. Lin assumed that Plaintiff's ability to perform certain activities, such grocery shopping, gardening, walking the dog, golfing, and coaching high school baseball, indicates that he could perform sedentary occupational demands on a full-time basis. However, that assumption is flawed for the reasons discussed above.  Third, Dr. Lin assumed that the fact that Plaintiff's MS continued to be treated with Copaxone instead of more powerful medications indicates that Plaintiff's MS symptoms were not significant enough to preclude him from performing sedentary occupational demands.  However, the record indicates that Plaintiff has remained on Copaxone at least in part because he has experienced no side effects on that medication, while stronger medications carry an "increased risk of side effects[.]"  *See* AR1659. That Dr. Lin did not consider possible side effects as a reason for why stronger medications had not been prescribed for Plaintiff renders his opinions less persuasive.  Finally, Dr. Lin did not personally examine Plaintiff to evaluate whether his self-reported MS symptoms prevent him from performing sedentary occupational demands.  Defendant was not required to ask Dr. Lin to conduct an in-person examination of Plaintiff.  But Dr. Lin's failure to conduct such an examination is an appropriate basis for the Court to accord less weight to his opinions, particularly when Dr. Lin's opinions contradict those of Dr. Cassini, who *did* conduct an in-person neurological evaluation of Plaintiff to evaluate his self-reported symptoms.  *See Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 634 (9th Cir. 2009) (noting that a plan administrator's choice to rely on a paper review and to not require a physical exam by a non-treating physician can "raise[] questions about the thoroughness and accuracy of the benefits determination" in certain cases) (citation and internal quotation marks omitted); *Heinrich v. Prudential Ins. Co. of Am.*, No. C 04-02943 JF, 2005 WL 1868179, at *8 (N.D. Cal. July 29, 2005) ("[T]he failure of Prudential's physicians to perform their own examinations of Heinrich entitles their opinions to less weight, because fibromyalgia produces symptoms that must be

___

[7] Although the March 1, 2024 letter was submitted by Dr. Kriseman after Dr. Lin completed his report, Defendant could have asked Dr. Lin to generate an addendum to his report after he was given an opportunity to review the letter.  But again, Defendant didn't do so.

United States District Court
Northern District of California

reported by the patient to the physician and that can be evaluated more fully through an actual examination than by a mere review of a patient's medical record.").

### C. The Other Arguments that Defendant Advances in Its Briefs Also Do Not Alter the Court's Conclusion

Defendant contends that Plaintiff was not disabled when his benefits were terminated and that his self-reported MS symptoms are not credible because: (1) his most recent MRI scans showed no significant changes and his treatment for MS symptoms has remained the same; (2) he has seen his treating neurologist only yearly since 2021 and skipped an annual MRI in 2022; and (3) in 2022, "there was discussion of whether he could be taken off his medication." *See* Dkt. No. 45 at 18; Dkt. No. 49 at 1, 9-10. The Court rejects this argument for the following reasons. First, the fact that there have been no significant changes in Plaintiff's MRI scans or treatment for MS is not inconsistent with Plaintiff experiencing symptoms related to MS that preclude him from working. This can be inferred from the fact that two neurologists, Dr. Kriseman and Dr. Cassini, concluded that Plaintiff was disabled from MS-related symptoms even though his MRI scans and treatment for MS have not changed significantly over the years. Second, the Court cannot reasonably infer that the frequency of Plaintiff's MRIs and visits to his neurologist indicates an absence of disability or that Plaintiff's self-reported symptoms are not credible because Defendant has cited no evidence or binding authority indicating that people who suffer from disabling MS-related symptoms tend to, or are required to, visit their neurologist and have MRIs more frequently than Plaintiff did. Third, Defendant's statement that there was discussion in 2022 that Plaintiff could be taken off his medication for MS is unsupported.[8]

---

[8] The only evidence that Defendant cites for the proposition that taking Plaintiff off his MS treatment was discussed in 2022 is a note written by a pharmacist prior to Plaintiff's appointment with Dr. Kriseman on July 18, 2022. The pharmacist wrote: "Dr. Kriseman to determine appropriateness of DMT; consider possible discontinuation of DMT due to clinical stability (MRI and no relapse for at least 5 years)." AR1676. During Plaintiff's visit with Dr. Kriseman on July 18, 2022, she discussed "other available DMD [sic] options that are on the market," but ultimately decided that Plaintiff would continue on Copaxone (the same medication for MS symptoms that he had been on for years) because of concerns about side effects from other medications. AR1659. The Court sees no indication in the notes for this visit that Dr. Kriseman discussed the possible discontinuation of medication for Plaintiff's MS symptoms.

24

Relatedly, Defendant argues that Dr. Kriseman's and Dr. Cassini's opinions are not reliable because they are premised on Plaintiff's self-reported symptoms, which Defendant contends are not credible. Because the Court has rejected Defendant's argument that Plaintiff's self-reported MS symptoms lack credibility, this argument fails.

Defendant next contends that the opinions of Dr. Kriseman and Dr. Cassini are conclusory and should be accorded no weight. The Court is not persuaded and finds that the opinions are sufficiently detailed, reliable, and entitled to significant weight for the reasons discussed above.

Defendant also argues that Plaintiff has not shown that his inability to sit for more than ten to fifteen minutes at a time precludes him from performing sedentary occupational demands because such demands allow for changes in position. *See* Dkt. No. 49 at 6. The Court disagrees. As noted, according to Defendant, sedentary occupational demands require, in relevant part: "mostly sitting, may involve standing or walking for brief periods of time, with the ability to make positional changes." *See* AR2575. Defendant has cited no evidence or legal authority indicating that "get[ting] up and mov[ing] around" for about ten minutes after every ten to fifteen minutes of sitting (which is what Plaintiff needs to do to relieve his leg pain and discomfort according to Dr. Kriseman, *see* AR2339-40) would fall within the scope of the "positional changes" that are permitted. Further, while the sedentary occupational demands' "mostly sitting" requirement "may involve standing or walking for *brief* periods of time," AR2575 (emphasis added), Defendant has cited no evidence or authority supporting its contention that moving around for about ten minutes after every ten to fifteen minutes of sitting would qualify as "mostly sitting, standing or walking for brief periods of time." Plaintiff needs to move around for ten minutes after every ten to fifteen minutes of sitting. That means that Plaintiff needs to be moving around about half the time and can only sit about half the time, which is not consistent with being capable of performing sedentary occupational demands that require "mostly sitting." *See Armani v. Nw. Mut. Life Ins. Co.*, 840 F.3d 1159, 1163 (9th Cir. 2016) (holding that "an employee who is unable to sit for more than half of the workday cannot consistently perform an occupation that requires sitting for 'most of the time'") (collecting and discussing relevant authorities).

Defendant next contends that its termination of Plaintiff's LTD benefits was appropriate because its initial approval of LTD benefits in 2012 was based on the assumption that Plaintiff's condition was due to Secondary Relapsing-Remitting MS, which, according to Defendant, is a more serious, progressive form of MS. *See* Dkt. No. 49 at 1-2. Defendant argues that the termination of benefits was justified because Dr. Kriseman diagnosed Plaintiff with Relapsing-Remitting MS in March 2023, which, according to Defendant, is a less serious form of the disease. *See id.* This argument fails because Defendant did not raise it when it terminated Plaintiff's LTD benefits or when it later upheld the termination.[9] *See Collier v. Lincoln Life Assurance Co. of Bos.*, 53 F.4th 1180, 1188 (9th Cir. 2022) (holding that a plan administrator is barred from raising new rationales in litigation that it did not cite "when it denied [the] claim initially and on review") (citations omitted). The argument fails for the additional reason that the record does not reflect that Dr. Kriseman diagnosed Plaintiff with Relapsing-Remitting MS in 2023. Defendant's own retained physicians noted in their reports that Plaintiff had been diagnosed with Relapsing-Remitting MS *in 2006*, which is at least five years before Plaintiff applied for LTD benefits. *See, e.g.*, AR2653 (Dr. Haller noting that "the available information in the file reflects the insured has a diagnosis of relapsing remitting multiple sclerosis since 2006 with symptoms including optic neuritis, fatigue and bilateral leg weakness/paresthesias"). Thus, Plaintiff has had a diagnosis of Relapsing-Remitting MS at all relevant times.

Finally, Defendant argues that the fact that Plaintiff's treating family medicine physician, Dr. Chang, stated in a form he filled out in October 2020 that Plaintiff did not have any physical or behavioral restrictions or limitations, *see* AR1076, indicates that Plaintiff was not disabled by MS symptoms at the time his benefits were terminated. *See* Dkt. No. 45 at 19. But again, Defendant did not raise this argument when it terminated Plaintiff's LTD benefits or when it later upheld the termination, so the Court can't consider it now. *See Collier*, 53 F.4th at 1188. And even if the Court could consider it, the statements on the form would be entitled to minimal weight.

---

[9] Defendant does not point to any portion of the administrative record showing that it terminated LTD benefits because Plaintiff had Relapsing-Remitting MS instead of Secondary Relapsing-Remitting MS.

Plaintiff's medical records indicate that his MS was treated not by Dr. Chang, who is a family medicine physician, but by various neurologists, the most recent of whom was Dr. Kriseman. Thus, Dr. Chang's statements on the form of October 2020 do not speak to Plaintiff's MS symptoms and any restrictions and limitations that he may have experienced because of them. This conclusion is supported by the fact that in February 2021, only a few months after it received Dr. Chang's statements of October 2020, Defendant approved the continued payment of LTD benefits based on Plaintiff's MS symptoms without mentioning those statements in the approval letter. *See* AR1505. Thereafter, Defendant continued to pay LTD benefits to Plaintiff for at least two more years, until it terminated the benefits in April 2023 for reasons other than the statements in Dr. Chang's note.

In sum, the Court finds and concludes that Plaintiff has met his burden of showing by a preponderance of the evidence that, at the time his LTD benefits were terminated, he could not perform any gainful occupation because of physical symptoms of MS in his legs. Defendant thus erred in terminating Plaintiff's benefits and in later upholding the termination.

## IV. CONCLUSION

The Court GRANTS Plaintiff's motion for judgment (Dkt. No. 43) and DENIES Defendant's motion for judgment (Dkt. No. 45).

The Clerk is directed to enter judgment in favor of Plaintiff and to close the case. The parties are directed to meet and confer regarding the filing and briefing schedule for any motion for attorneys' fees and costs.

**IT IS SO ORDERED.**

Dated: March 27, 2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

27